UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2005 MAR 16  P 2: 28

NO. 04-30019-MAP

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA   )
)
)
V.                         )
)
)
ROBERT KNOWLES,            )

## SUPPLEMENTAL MEMO IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS STATEMENT

In the case at hand, under Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Palmer Police Department was required to read warnings to the defendant immediately upon arrest at the defendant's house. On March 2, 2005 an evidentiary hearing was held in front of the Honorable Judge Michael Ponsor. During this hearing, Sergeant Burns of the Palmer Police Department testified that he and approximately eight officers with guns drawn busted the defendant's door down to his trailer park and immediately placed the defendant under arrest. Sergeant Burns admitted that the defendant was immediately placed under arrest, handcuffed and was never free to leave. Sergeant Burns then testified that immediately after the defendant was placed under arrest, he asked the defendant a question, whether there were any guns in the house. The defendant replied in the negative. Contrary to Sergeant Burns's police report, Sergeant Burns testified that this occurred prior to any Miranda warnings being read to the defendant.

The government indicated in oral argument that they would rely upon New York v. Quarles, 467 U.S. 649, 656-657 (1984), which established a public safety exception to the Miranda requirements. This reliance upon Quarles by the government must fail. The facts in

Quarles are that two police officers received information from a woman who stated that she had just been raped. She described her assailant, and told them that the man had just entered a supermarket and was carrying a gun. One of the officers entered the store, located the assailant and pursued him with a drawn gun. The officer lost sight of the man for several seconds. However, he again saw the assailant, and ordered him to stop and put his hands over his head. The officer frisked him and discovered an empty holster. The officer handcuffed the assailant and asked him where the gun was. The man nodded his head toward some empty cartons and stated, "the gun is over there." Id. at 651-652.

In reversing the lower courts, the Supreme Court carved out an exception in those narrow circumstances where "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment privilege against self-incrimination." Id. at 657.

Quarles specifically addresses an immediate threat to public safety. The defendant just raped someone and was out in the public when his gun disappeared. It was clear that this gun was still out there somewhere and could get in the wrong person's possession and harm someone. We do not have this situation in the case at hand. The defendant was captured in his home, where he obviously was asleep for quite some time. There is no indication that this gun was loose out in the public where it could prevent a threat to the public. This public safety exception does not apply in this case.

Sergeant Burns then testified that Miranda was then read to the defendant orally at the house on two occasions. This is not exactly true. What Sergeant Burns testified to was that he read the defendant his Miranda rights completely one time and when the defendant continued he reminded him of his Miranda rights. He did not testify that he read them to the defendant completely a second time. Further, there was no evidence that the defendant expressly waived

his <u>Miranda</u> rights except for the statement "I don't need no fucking piece of shit lawyer", which is more a profession of disgust with attorneys than it should constitute a waiver of rights as important as <u>Miranda</u> rights. Further, there is no indication that the other <u>Miranda</u> required rights such as the right to appointed counsel and the fact that statements of his could be used against him at trial were understood and waived.

In the government's memo, they then rely on a theory of implied waiver. <u>Bui v. DiPalo</u>, 170 F. 3d 232, 240 (1st. Cir. 1999) and state that it is "ludicrous" for the defendant to now state that he intended to assert his rights, in light of the fact that the defendant kept on talking. The government is forgetting an important underpinning of the <u>Bui</u> decision, which is the fact although a theory of implied waiver is recognized, when it applies depends on the circumstances of the case. <u>Id</u>. This court further concluded, "there are certain types of cases in which courts routinely conclude that a defendant who has professed an understanding of his right to remain silent has waived that right." <u>Id.</u> In Bui itself the court ruled that the defendant fit the theory of implied waiver as he stated "the Constitution would protect me" and then said "you have nothing on me". <u>Id</u>. In the case at hand, the defendant does not make such a statement indicating he understood all of his Miranda rights.

In <u>United States v. Garcia</u>, 983 F.2d 1160 (1st. Cir. 1993), the court upheld a waiver in a situation where the police restrained the defendant and the INS agent gave the <u>Miranda</u> warnings in Spanish and specifically asked defendant if he understood each right as it was read to him. After each such question the defendant responded affirmatively. After these rights the agent asked if he was willing to answer questions without a lawyer being present and he said yes.

The law in this circuit is clear. After being advised of one's <u>Miranda</u> rights, the accused may validly waive his right to remain silent and right to counsel and respond to questions. <u>Id.</u>

The determination of whether a valid waiver of the right to counsel or right to remain silent was made depends on whether the waiver was knowing and intelligent, given the totality of circumstances and the facts surrounding the particular case, including the background, experience and conduct of the accused. Johnson V. Zerbst, 304 U.S. 458, 464 (1938). An express waiver is not required. Garcia at 1169. What is required is a clear showing of the intention, intelligently, exercised, to relinquish a known and understood right. Patterson v. Illinois, 487 U.S. 285, 292 (1988). "Miranda requires the officer to go further than just asking accused if he understands his rights; the officer must make sure that the accused, knowing his rights, voluntarily relinquishes them." Garcia at 1169. At the station, the defendant clearly does not demonstrate in any fashion whether implicitly or explicitly that he knowingly relinquished his rights. The Commonwealth again wants to rely on the fact that the defendant is "experienced with the criminal justice system" yet in spite of his record, it is counsel's memory that there was no evidence presented at the hearing that the defendant had ever been given his Miranda rights prior to this case.

As a result of this the defendant made two statements at his house, which was a product of a custodial interrogation. In the first statement, the defendant denied knowledge of a gun in the house. The second statement, the defendant admitted the safe where the gun was found was his. As a result of these statements, the police obtained information necessary to find certain physical evidence and contributed to information necessary in the taking of the third statement, which led to a further admission on the part of the defendant. Both the evidence seized and the second statement must be suppressed under Wong Sun v. United States, 371 U.S. 471 (1963); and Darwin v. Connecticut, 391 U.S. 346, 350-351 (1968) where a first illegally obtained statement led to a second statement without a break in the stream of events.

Finally at the station, Officer Burns finally gave the defendant his rights in written form. Although, in the government's memo they state that Mr. Knowles was sufficiently intelligent and educated and experienced with criminal matters, the evidence presented contradicts these statements. Officer Burns testified that when asked whether he understood what was given to him, he answered "not too good". Although, Officer Burns stated that when he asked Mr. Knowles to read it back to him, it was his opinion that he could read o.k. However, there was no evidence presented indicating that Officer Burns is some sort of expert on literacy issues. Mr. Knowles told him that he could not read so "good". The fact that he signs a waiver sheet and initials his statement is immaterial if he could not read it.

Finally, the defendant asks that this court not allow his statement taken at the station to be admitted under both the Fifth, Sixth and Fourteenth Amendments to the United States Constitution because the police failed to tape his interrogation at the station. The defense is aware that currently, there is no federal law requiring that interrogations be tape-recorded. However, we urge this court to impose such an obligation. To date, only two state courts have imposed a requirement that interrogations be recorded. Stephan v. State, 711 P. 2d 1156, 1158 (Alaska 1985) and State v. Scales, 518 N.W. 2d 587, 592 (Minn. 1994). Also three states and the District of Columbia have passed legislation, which have imposed recording requirements for certain types of interrogations (Illinois, Maine and Texas). Massachusetts recently required a cautionary jury instruction be given when a custodial interrogation is not taped. Commonwealth v. Digiambattista, 442 Mass. 423 (2004).

In the case at hand, where the issue of whether the defendant really understood his rights and voluntarily waived these rights due to his lack of reading skills and education, the taping of this interview could have shed ultimate light on this issue. There is no dispute that in this case as with a lot of cases, the defendant's alleged confession can be extremely powerful evidence

admitted against a defendant. If the defendant's statement is recorded, the fact finder would be in a much better position to evaluate the precise circumstances of the statement and of any waivers made. In this particular case, the fact finder not having the benefit of this type of recording is only possessed with an incomplete and therefore inherently unreliable version of a critical piece of evidence in the case at hand. This evidence is at the control of the government. This being the case, the defendant's Due Process Rights under the United States Constitution are by the nature of this process violated.

## CONCLUSION

Illegal confessions, whether obtained in violation of the Fourteenth Amendment due process clause, the Sixth Amendment right to counsel or the Fifth Amendment privilege against self-incrimination is inadmissible against the confessor as evidence of guilt. The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against themselves." The Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966), "presumed that interrogation in certain custodial circumstances is inherently coercive and that statements made under these circumstances are inadmissible unless the suspect is specifically informed of his Miranda rights and freely decides to forgo those rights." New York v. Quarles, 467 U.S. 649, 654 (1984).

Any statements, admissions or confessions were obtained in violation of the defendant's privilege against self-incrimination and his right to counsel as guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Mr. Knowles, therefore through counsel requests that this court issue an order prohibiting the from using any statements or other evidence

obtained either directly or indirectly as a result of the above described illegal interrogation.

Respectfully submitted,

THE DEFENDANT

By: _____
ALAN JAY BLACK, His Attorney
1383 Main St.
Springfield, MA 01103
(413) 732-5381
BBO# 553768